

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 DEC 18  PM 4:40

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DYSON, INC., | CIVIL ACTION NO. 07-9633 |
| Plaintiff, | SECTION SECT. I MAG 5 |
| | MAGISTRATE |
| v. | COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES |
| ORECK CORPORATION; ORECK HOLDINGS, LLC; ORECK DIRECT, LLC; ORECK MERCHANDISING, LLC; ORECK SALES, LLC; ORECK HOMECARE, LLC; and ORECK@HOME, LLC, | DEMAND FOR TRIAL BY JURY |
| Defendants. | Related to Civil Action Nos. 05-0361 & 07-2744 |

Dyson, Inc. ("Dyson"), by its undersigned counsel, for its complaint against Oreck Corporation; Oreck Direct, LLC; Oreck Merchandising, LLC; Oreck Sales, LLC; Oreck HomeCare, LLC; and Oreck@Home, LLC (collectively, "Oreck"), alleges on knowledge as to itself and upon information and belief as to all other matters as follows:

## INTRODUCTION

1. Dyson believed, when it entered into a settlement agreement with Oreck less than a year ago, that Oreck's strategy of falsely maligning Dyson's products had ended. Dyson was wrong.

Fee $350
✓ Process
x Dktd
___ CtRmDep
___ Doc. No.

2. As part of the settlement of the prior action, Oreck agreed that it would not make certain advertising claims featuring Dyson vacuum cleaners.[1]

3. Recently, however, as the centerpiece of a new advertising campaign maligning Dyson, Oreck breached its agreement by broadcasting a new half-hour long attack on Dyson vacuum cleaners in a so-called infomercial. The major theme of Oreck's infomercial is that the Dyson DC14 model vacuum cleaner shown throughout the infomercial is, as compared to the Oreck model shown, "dirty," "messy," "unsanitary," and the like. This advertising is both an *admitted* breach of Oreck's promises in the settlement agreement and unlawful false advertising. What is worse, Oreck's improper advertising occurred during the busiest shopping season of the year, all in an effort to take sales and market share, illegitimately, from Dyson.

4. The infomercial is only one element of Oreck's multi-facetted attack on Dyson. Oreck has also been using improper in-store and print advertising falsely disparaging Dyson.

5. Oreck's new advertising campaign makes numerous advertising statements that violate the Lanham Act and the Louisiana Unfair Trade Practices Act ("LUTPA"). Among these false and misleading factual claims comparing the Dyson to the Oreck are claims: (1) that the Dyson DC14 model vacuum cleaner, as compared to the new Oreck XL Ultra vacuum cleaner, "simply cannot" clean under furniture; (2) that the Dyson vacuum cleaner is "messy" and "spreads" dirt when emptied; (3) that, in contrast, not even a "puff" of dirt is emitted when the Oreck is emptied; (4) that washing the Dyson washable filter is "not sanitary" and a "dirty little secret," while changing the Oreck filter bag *does not require the user to come into contact with dirt*; (5) that the new Oreck XL Ultra model weighs "only 9

---

[1] The terms of the parties' settlement agreement are confidential. As noted *infra* n. 2, the Settlement Agreement is part of the record in Civil Action No. 07-2744 (E.D. La.).

pounds" when that weight is, as typical for Oreck, understated, a comparison made even more disparaging because Oreck simultaneously claims that the weight of the Dyson DC14 is "back breaking"; and (6) that only the Oreck XL Ultra, and not the Dyson DC14, helps inhibit bacteria to "protect[] you and your family."

6. Oreck's recent advertising in violation of the parties' agreement and the false advertising laws has caused and will continue to cause irreparable harm to Dyson's reputation, goodwill and the sales of its vacuum cleaners — indeed, that is precisely Oreck's plan.

## PARTIES

7. Plaintiff Dyson, Inc. is a corporation organized under the laws of the State of Illinois, with its principal place of business in Chicago. Since 2002, Dyson has sold Dyson-branded vacuum cleaners throughout the United States.

8. Defendant Oreck Corporation is a Delaware corporation. Defendants Oreck Holdings, LLC; Oreck Direct, LLC; Oreck Merchandising, LLC; Oreck Sales, LLC; Oreck HomeCare, LLC; and Oreck@Home, LLC are Delaware limited liability companies. Oreck's principal place of business is 100 Plantation Road, New Orleans, Louisiana. Oreck sells its Oreck-branded vacuum cleaners throughout the United States, including in Louisiana, and does so through direct, retail and other sales channels.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in this court pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (diversity) and 1367 (supplemental). The amount in controversy exceeds $75,000.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

11.   This Court has personal jurisdiction over Oreck.

## BACKGROUND

### The Prior Action and its Settlement

12.   In late 2004, Dyson sent Oreck a cease and desist letter with respect to an advertising campaign Oreck was then using that, among other things, falsely asserted that bagless vacuum cleaners, such as those made by Dyson, were "dirty." Instead of stopping its false advertising, Oreck's response was to file a preemptive action *against* Dyson in Case No. 05-0361 (the "Prior Action") for violations of the Lanham Act and the LUTPA. Dyson answered and counterclaimed against Oreck for the false statements in Oreck's advertisements, including the false statements that bagless vacuums are "dirty," "spread dirt" and are "unsanitary." In Dyson's amended counterclaim, Dyson also sued Oreck for its repeated false statements that Oreck's "XL" vacuum cleaners weigh eight pounds, as it learned in discovery that such claim was completely and knowingly false.

13.   After two years of litigation, and with motions for summary judgment pending, the parties reached a settlement, agreeing, subject to certain conditions, to dismiss their respective complaints with prejudice and to release each other from all advertising claims arising out of and related to the Prior Action. The settlement was embodied in a binding term sheet (the "Term Sheet") that was later incorporated into and made a part of a final settlement agreement (the "Settlement Agreement"). The Term Sheet and Settlement Agreement both have an effective date of January 5, 2007.

14.     In the Term Sheet, Oreck agreed that it would not make certain claims for an agreed period of time.[2]

**Oreck's New and Improper Advertising Campaign Targeting Dyson**

15.     Despite its express promises in the Settlement Agreement, in or around the end of October 2007, Oreck launched a national advertising campaign that falsely and maliciously disparaged Dyson vacuum cleaners in a manner prohibited by both the Settlement Agreement and federal and state false advertising laws.

16.     In connection with its advertising campaign, Oreck began using a "comparison chart" in store displays featuring a picture of the Dyson DC14 model vacuum cleaner, and falsely stating that the DC14 vacuum cleaner is "dirty."

17.     Additionally, these same advertising materials falsely contrasted the weight of the Dyson DC14 vacuum cleaner and the Oreck XL Ultra vacuum cleaner, claiming that the Dyson weighs 20 pounds but the Oreck weighs only 9 pounds. Incredibly, neither weight is correct. The DC14, in fact, weighs 18.4 pounds, whereas the Oreck, by contrast, actually weighs 10.3 pounds.

18.     To lure customers into its stores to see its false comparisons, Oreck also disseminated print advertisements across the country showing a Dyson model vacuum cleaner next to an Oreck model vacuum cleaner and asking consumers to "judge" "which one is more

---

[2]     The terms of the Settlement Agreement are confidential. Dyson has filed the Settlement Agreement under seal with this Court as part of the record in another action in which Oreck breached the Settlement Agreement, Case No. 07-2744. In that case, in contravention of other provisions of the Settlement Agreement, Oreck brought an action against Dyson challenging Dyson advertising claims that Oreck had agreed to release in the settlement of the Prior Action, and which the parties had agreed Dyson could continue to make without further liability to Oreck. See Oreck Direct, LLC v. Dyson, Inc., Civ. A. No. 07-2744 (E.D. La.). Dyson moved to dismiss Oreck's complaint on the grounds that it is barred by the settlement and dismissal of the Prior Action. Dyson's motion was argued before the Honorable Sarah Vance, United States District Judge, and submitted for decision on September 26, 2007.

sanitary." Of course, because these advertisements feature Oreck's spokesperson David Oreck and are advertisements for Oreck products, the clear message to consumers is that the Oreck vacuum is somehow "more sanitary" — a claim that violates the parties' Settlement Agreement and is literally and impliedly false and misleading. Oreck also broadcast television commercials inviting customers into its stores to see Oreck's improper comparison of the Dyson and Oreck vacuum cleaners.

19. On December 3, 2007, having become increasingly concerned about the impact of Oreck's improper advertising campaign, Dyson's counsel demanded that Oreck cease its violations of the Settlement Agreement and false advertising.

20. On December 4, 2007, Oreck's counsel responded by claiming that the comparison chart was a "training paper" not intended for public display, but that, in any event, Oreck would undertake to advise its stores that "any such documents should be removed from public display . . . and that copies should not be provided to customers."

21. Based on Oreck's representations that the chart had not been widely displayed and Oreck's undertaking to cease its dissemination, it appeared that the issue was resolved. Unfortunately, mere days after receiving Oreck's letter, Dyson learned that Oreck had been committing far more serious and harmful violations of the Settlement Agreement and false advertising laws. Oreck made no mention of these in its December 4 correspondence with Dyson.

**Oreck's New Infomercial Attacking Dyson**

22. On or around November 19, 2007 (as Dyson only learned in December 2007), Oreck had begun broadcasting a new half-hour television advertisement — a so-called "infomercial" — in major markets across the United States disparaging Dyson products.

23. Throughout this new infomercial, Oreck "compares" its new Oreck XL Ultra model vacuum cleaner to a Dyson DC14 model vacuum cleaner. (Oreck does not identify the Dyson product by name in the infomercial — referring to it instead as a "leading bagless vacuum cleaner" — but the Dyson vacuum cleaner shown in the infomercial is unmistakably a Dyson, and is instantly recognizable as such by its highly distinctive color, prominent cyclonic features and unique design.)

### *Violation of the Settlement Agreement*

24. In violation of the Settlement Agreement, the major theme of Oreck's infomercial is how "dirty" and "unsanitary" the Dyson vacuum cleaner shown is. The infomercial contains the following, among many other, statements disparaging the Dyson: that it is "not very clean or sanitary," that it is "messy" and "will spread dirt and dust all over my house"; that it is not "sanitary at all"; that the "unsanitary mess that comes with emptying the dust cup" is "disgust[ing]"; that the "unpleasant smell" "is probably the bacteria growing on your vacuum" and that it has "a dirty little secret"; all while the Oreck "is much more sanitary," "seems like a more sanitary process" and has a more "sanitary nature."

25. Oreck also supports its theme with multiple "demonstrations" showing the Dyson as dirty and spreading dirt as compared to the Oreck.

26. Each of these assertions and demonstrations violates the Settlement Agreement. Oreck has admitted that this infomercial "should not have aired" in this form because it violates the Settlement Agreement.

### *False and Misleading Advertising*

27. The infomercial is also replete with false and misleading claims (including the foregoing "dirty" claims).

28. **False Dyson "Cannot" Clean Under Furniture Claim.** Oreck claims the Dyson DC14 vacuum cleaner shown in its advertising is unable to reach under furniture that can be reached by the Oreck model, and states that the Dyson is "too bulky" and "simply cannot" do so. Oreck's assertions and visual demonstrations are completely false and misleading because the DC14 in fact *can* easily clean under furniture and in other "hard to reach" places. Oreck simply refused to use the hose and wand tools attached to Dyson vacuum cleaners for that very purpose, failing to even notify consumers of their existence. Further still, many DC14s are sold with a low reach floor tool, which attaches to the Dyson DC14 and is specifically designed to allow for easier cleaning under low furniture and hard-to-reach places such as under beds and sofas.

29. Oreck has since admitted through its counsel that the Dyson DC14 *can*, in fact, clean under furniture. Oreck has no excuse for this literally false claim that is central to its *half-hour infomercial*.

30. **False Bin Emptying Claim.** Oreck's infomercial repeatedly purports to demonstrate the emptying of the Dyson by improperly holding the Dyson bin at the top of a garbage can, and claiming that emptying it "spread[s] dirt" and is "messy." These claims and demonstrations are false because Oreck fails to empty the Dyson bin properly in accordance with Dyson's operating instructions.

31. **False "Saniseal" Claim.** Oreck also falsely claims and purports to demonstrate that its vacuum bags, with Oreck's "Saniseal" system, create "no puff of dirt" and do not "spew dirt into the air," when in fact they do.

32. **False Filter Comparison.** Oreck's infomercial also claims that the user of the Oreck does not need to come into contact with the dust and dirt captured by the vacuum

and states that, by comparison, the Dyson washable filter is "not very clean or sanitary." These claims are false and misleading.

33. **False Weight Claim.** Oreck's infomercial also claims that the Oreck XL Ultra vacuum cleaner weighs "only nine pounds," and that the weight of the Dyson, by comparison, is "backbreaking." Oreck's claim is false: in fact the Oreck vacuum cleaner shown in its infomercial weighs 10.3 pounds.

34. Oreck has admitted through its counsel that the Oreck XL Ultra in fact weighs 10.3 pounds. Accordingly, there is no question that Oreck's infomercial claim is false.

### False "Bacteria" Inhibitor Claims

35. In addition to the foregoing, Oreck's stores have begun displaying signs in their storefronts that depict both an Oreck vacuum and a Dyson vacuum and state "Only one of these vacuums helps inhibit bacteria." This claim is literally and impliedly false and misleading. The act of cleaning — by almost any vacuum — will reduce the bacteria present in a home, and Dyson vacuum cleaners, specifically, are designed so that the bin in which dirt is collected will be a dry environment inhibiting bacterial growth in the vacuum.

36. Oreck has also been publishing other advertising making similar false claims. For example, Oreck has published a print advertisement that, once again, depicts an Oreck vacuum cleaner and a Dyson vacuum cleaner and has as its headline in large font all capital letters: "VACUUMS ARE A BACTERIA BREEDING GROUND. ONLY ONE OF THESE HELPS SOLVE THAT." This advertising is completely false and misleading. The Dyson DC14 vacuum is not "a bacteria breeding ground."

37. Aside from being an improper attack on Dyson, Oreck's "bacteria" claims in this advertising and elsewhere are also false and misleading because the third-party antimicrobial coating on certain parts of Oreck vacuum cleaners that Oreck is marketing as its

-9-

"Intellashield Technology" does not allow for claims of health benefits. The manufacturer of the antimicrobial product Oreck uses in its Oreck XL vacuum cleaners states that the product can provide certain protection against stains, odors and product degradation, *but does not claim health benefits.* Ignoring this, Oreck advertises in its infomercial that its "Intellashield" coating is a "bacteria fighting barrier on the Oreck XL that protects you and your family" and creates a "healthy environment."

\* \* \*

38. Dyson's investigation of Oreck's false advertising is ongoing. Dyson may not have yet uncovered the full extent of Oreck's false advertising and violations of the Settlement Agreement.

**Irreparable Harm and Damage to Dyson**

39. The parties expressly agreed that violations of the relevant provisions of the Settlement Agreement described above would constitute irreparable harm without an adequate remedy at law.

40. Additionally, Oreck's false advertising is, as a matter of fact, intended to and will irreparably and unfairly harm Dyson, including damaging its reputation and goodwill, taking sales away from Dyson and reducing Dyson's market share.

**Oreck's Refusal to Address Its Violations**

41. On October 29, 2007 Dyson's counsel, without yet knowing the full extent of Oreck's national advertising campaign, alerted Oreck to Dyson's concerns with respect to Oreck's use of Dyson vacuum cleaners in its stores. Oreck's counsel represented that the issue would be looked into. Oreck's counsel, however, provided no further response.

42. After becoming aware of Oreck's violations of the Settlement Agreement and the false advertising laws in Oreck's comparison chart, as set forth above, Dyson's counsel

sent Oreck's counsel a letter on December 3, 2007 requesting that Oreck cease and desist its violations of the Settlement Agreement and the false advertising laws so that the parties could avoid unnecessary litigation. Oreck responded that the comparison chart was a "training paper" that was not intended for public distribution, but that Oreck would, in any event, promptly cease its display in stores.

43. After receiving Oreck's response, Dyson learned of Oreck's additional settlement violations and false advertising embodied in its infomercial, and on December 12, 2007, Dyson's counsel sent Oreck and its counsel a further letter demanding that Oreck cease the violations of the Settlement Agreement and false advertising laws set forth herein. In that letter, Dyson set a deadline of the close of business on Friday, December 14, 2007.

44. Oreck's counsel responded to Dyson's letter on Monday, December 17, 2007. In its response, Oreck admitted to violations of the Settlement Agreement and that certain of its advertising claims were factually false.

45. When caught red-handed, Oreck claimed that it was airing its new infomercial for "test purposes" for a planned later campaign.

46. In its letter, Oreck conceded that it "should not have aired" its infomercial in violation of the Settlement Agreement. It represented that it had "pulled" the infomercial and "promised" not to broadcast it again until the expiration of the relevant clause of the Settlement Agreement, *i.e.*, January 5, 2008. Despite its admitted violations, however, Oreck refused to provide Dyson with any remedy.

47. Oreck also admitted in its letter that the Dyson DC14 can, in fact, clean under furniture, despite Oreck's advertising that it "simply cannot," and that the Oreck XL Ultra weighs 10.3 pounds, not "only nine pounds," as Oreck claims in its infomercial.

48. Despite its admitted violations of the Settlement Agreement and false advertising, Oreck's counsel would not agree to cease broadcasting the infomercial altogether. Instead, Oreck limited its "promise" to cease airing its infomercial only until January 5, 2008, when the relevant provision of the Settlement Agreement is set to expire.

49. Dyson has repeatedly warned Oreck that its advertising violates the false Lanham Act and the LUTPA. Oreck's continued use of such advertising is deliberate and willful false advertising.

### FIRST COUNT
(Violation of Settlement Agreement)

50. Dyson realleges and incorporates by reference the allegations of paragraphs 1–49 above.

51. The Settlement Agreement is a valid and binding agreement between Dyson and Oreck enforceable by Dyson.

52. At all relevant times, Dyson duly performed all material conditions, covenants and promises on its part to be performed under the Settlement Agreement.

53. As set forth herein, despite Dyson's diligent fulfillment of its obligations under the Settlement Agreement, Oreck has breached its obligation under the Settlement Agreement by broadcasting televised infomercials, publishing advertisements, and displaying signage in its stores referring to Dyson vacuum cleaners as dirty, unsanitary, unhealthy or the like.

54. As Oreck agreed in the Settlement Agreement, Oreck's breaches of the Settlement Agreement caused irreparable harm to Dyson.

55. Oreck has admitted that it has breached the Settlement Agreement.

56. As a result of Oreck's actions, Dyson suffered damages in an amount to be determined by a jury.

57. As a result of Oreck's breaches of the Settlement Agreement, Dyson is entitled to an equitable remedy, including an extension of the effective term of the provision Oreck violated, and injunctive relief prohibiting Oreck from violating the provision during such an extension.

58. Dyson is entitled to its costs and attorneys' fees for this action.

### SECOND COUNT
(False Advertising—Lanham Act § 43(a))

59. Dyson realleges and incorporates by reference the allegations of paragraphs 1-58 above.

60. Oreck's false and misleading descriptions of fact or representations of fact, which misrepresent the nature, characteristics and qualities of Oreck's and Dyson's products violate section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because they are literally false, implicitly false and misleading.

61. Oreck's false and misleading statements have deceived or have the capacity to deceive a substantial segment of potential consumers.

62. Oreck's false and misleading claims are material in that they are intended to, and are likely to, mislead and deceive consumers to not purchase Dyson-brand vacuum cleaners and to purchase Oreck-brand vacuum cleaners.

63. Oreck's conduct is willful, deliberate and in bad faith. Dyson explicitly warned Oreck that it would bring suit if Oreck continued to disseminate its false advertising. Oreck has chosen to ignore that warning and continue with its false advertising.

64. Both Oreck and Dyson vacuums are sold in interstate commerce.

65. Dyson has been and is continuing to be damaged by Oreck's false advertising in an amount to be proved at trial.

66. Dyson has suffered, and unless Oreck is restrained and enjoined, will continue to suffer irreparable injury in the form of, among other things, lost goodwill, harm to reputation, lost consumer confidence in its products, lost sales and lost market share by reason of the false and misleading claims made by Oreck, for which Dyson has no adequate remedy at law.

## THIRD COUNT
(False Advertising—Louisiana Unfair Trade Practices Act)

67. Dyson realleges and incorporates by reference the allegations of paragraphs 1-66 above.

68. Oreck's false and misleading descriptions of fact or representations of fact, which misrepresent the nature, characteristics and qualities of Oreck's and Dyson's products violate the Louisiana Unfair Trade Practices Act, La. Rev. Stat. Ann. §§ 51:1401-1430, because they are literally false, implicitly false and misleading.

69. Oreck's false and misleading statements have deceived or have the capacity to deceive a substantial segment of potential consumers.

70. Oreck's false and misleading claims are material in that they are intended to, and are likely to, mislead and deceive consumers to not purchase Dyson-brand vacuum cleaners and to purchase Oreck-brand vacuum cleaners.

71. Oreck's conduct is willful, deliberate and in bad faith.

72. Dyson has been and is continuing to be damaged by Oreck's false advertising in an amount to be proved at trial.

73. Dyson has suffered, and unless Oreck is restrained and enjoined, will continue to suffer irreparable injury in the form of, among other things, lost goodwill, harm to

reputation, lost consumer confidence in its products, lost sales and lost market share by reason of the false and misleading claims made by Oreck, for which Dyson has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Dyson respectfully requests that this Court enter judgment and interim orders:

A. Enjoining Oreck preliminarily and permanently from employing advertising methods that mislead consumers by falsely comparing its vacuum cleaners to and disparaging Dyson's vacuum cleaners and from disseminating any advertisement containing any of the claims challenged by this Complaint;

B. Declaring that the provision of the Settlement Agreement which Oreck has violated shall be equitably extended and enjoining Oreck preliminarily and permanently from breaching the provision during such extension;

C. Awarding Dyson damages and an accounting of Oreck's profits obtained from its unlawful conduct, together with interest, according to proof to be offered at trial;

D. Awarding treble damages pursuant to 15 U.S.C. § 1117 for damages awarded under the Lanham Act;

E. Awarding Dyson punitive and enhanced damages for Oreck's willful violations;

F. Awarding Dyson all damages flowing from Oreck's conduct in bad faith pursuant to La. Civ. Code art. 1997;

G. Granting Dyson its reasonable attorneys' fees, costs and disbursements in this action; and

  H. Granting Dyson such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Dyson hereby demands trial by jury of any and all issues properly triable by a jury.

Dated: December 18, 2007

                PHELPS DUNBAR LLP

               By: _____
               David L. Patron (La. Bar No. 22566)
Of Counsel:          Catherine E. Lasky (LA Bar No. 28652)
               Suite 2000, Canal Place
Michael H. Steinberg       365 Canal Street
Anthony J. Lewis        New Orleans, LA 70130-6534
SULLIVAN & CROMWELL LLP   Telephone: (504) 566-1311
1888 Century Park East      Facsimile: (504) 568-9130
Los Angeles, CA 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

Garrard R. Beeney
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

        *Attorneys for Dyson, Inc.*