DYSON, INC.                                    CIVIL ACTION

VERSUS                                         NO: 07-9633

ORECK CORP., ET AL.                            SECTION: R(5)


## ORDER AND REASONS

Before the Court is defendant Oreck's Motion for Partial
Summary Judgment.  For the following reasons, the motion is
DENIED in part and GRANTED in part.


## I.    BACKGROUND

This case is the third action in the past three years
between Oreck and Dyson.  In the first action, *Oreck Holdings,
LLC v. Dyson, Inc.*, No. 05-361, Oreck alleged that Dyson's "no
loss of suction" advertisment was false advertising under the
Lanham Act.  Dyson then brought a number of false advertising
counterclaims against Oreck. (05-361, R. Doc. 15).  The parties
filed cross-motions for summary judgment, and the motions were
set for oral argument on January 10, 2007.  Before the motions
could be heard, the parties settled on January 5, 2007, and the
Court dismissed the action with prejudice on January 10, 2007.
(R. Doc. 148).  The settlement agreement contained a mutual
release for all claims "arising out of" or "related to" the

advertisements that were at issue and provided that the parties could continue making those claims for products that were "existing in the United States marketplace" as of the day of the settlement. (R. Doc. 39, Exhibit 1). Four months after the settlement, Oreck sued Dyson for false advertising with regard to its newest model, the DC18. (07-2744, Complaint, R. Doc. 1). Oreck again claimed that Dyson's "no loss of suction" claim was false advertising, and the Court issued summary judgment on *res judicata* grounds. (07-2744, R. Doc. 42).

Dyson filed the present suit against Oreck Corporation; Oreck Direct, LLC; Oreck Merchandising, LLC; Oreck Sales, LLC; Oreck HomeCare LLC; and Oreck@Home, LLC (collectively known as "Oreck") on December 18, 2007. Dyson claims that Oreck's new advertising campaign directly attacking Dyson violates the Lanham Act and the Louisiana Unfair Trade Practices Act ("LUPTA"). Oreck now moves for summary judgment.

**1.   The First Lawsuit (*Dyson I*)**

In the first lawsuit, Oreck sought damages and injunctive relief against Dyson based on Dyson's advertisements that its vacuum cleaners "do not lose suction." Dyson counterclaimed that a number of Oreck's advertisements violated the Lanham Act and LUTPA. First, Dyson complained that Oreck's advertisements for its Oreck XL vacuum cleaner line falsely asserted that the Oreck XL "maintain[s] suction power" and "doesn't lose power." (05-

0361, Complaint, ¶¶37-41).  Second, Dyson complained that Oreck's 2004 advertising campaign attacking "bagless vacuums" was false and misleading. (05-0361, Complaint, ¶42).

The campaign included a half-hour infomercial for Oreck vacuum cleaners in which Oreck's founder, David Oreck, warned customers that "bagless vacuums spread dirt, bacteria, mold and allergens all over your home." (05-0361, Complaint, ¶43).  In the infomercial, David Oreck first takes a bag, filled with dust visible under black light, out of an Oreck vacuum cleaner and places it into a trashcan.  He then uses a black light to purportedly show that the vacuum cleaner did not spread dust when emptied.  Then Oreck empties the canister of a Hoover, a bagless vacuum cleaner similar to Dyson's models. (05-0361, Complaint, ¶45).  Oreck uses the black light to show the dust that allegedly spread upon emptying the canister.  Dyson claimed that the infomercial was false and misleading for a number of reasons. First, Dyson claimed that the video was edited to make it appear as if an Oreck user can effortlessly remove the bag as David Oreck does, whereas users must actually unclip the bag from the vacuum. (05-0361, Complaint, ¶46).  Second, Dyson claimed that David Oreck did not actually follow the manufacturer's instructions when emptying the bagless vacuum. (05-0361, Complaint, ¶46).  Third, Dyson claimed that the Oreck infomercial contained sixteen false factual claims. (05-0361, Complaint,

¶47). Dyson also claimed that Oreck made these sixteen allegedly false statements, as well as least four other false statements, in radio advertisements, on its website, in print and catalogue advertising, and in direct mailings to customers. (05-0361, Complaint, ¶49). Dyson further claimed that Oreck falsely advertised that its XL model weighed 8 lbs., when it allegedly weighed 10.3 lbs.

## 2. Oreck's Advertising and Promotion of the new Oreck XL

Here, Dyson seeks damages and injunctive relief against Oreck for its latest advertising campaign against bagless vacuums. Dyson complains that Oreck's new half-hour infomercial and in-store and print advertising falsely malign the Dyson DC14 model vacuum cleaner in violation of the Lanham Act and LUPTA. (R. Doc. 1, ¶ ¶3-4). Dyson asserts that Oreck's half-hour infomercial falsely states that (1) the Dyson DC14 "cannot" clean under furniture; (2) emptying the Dyson model's bin "spreads dirt" and is "messy;" (3) the Oreck's "Saniseal" system creates "no puff of dirt" when emptying the vacuum cleaner; (4) Oreck users do not come into contact with dust and dirt captured by the vacuum, in contrast to Dyson users, who must use a filter that is "not very clean or sanitary" and a "dirty little secret;" (5) the Oreck XL weighs "only nine pounds," compared to the Dyson, whose users find it "backbreaking." (R. Doc. 1, ¶ ¶27-34). Dyson also states that the infomercial's disparaging descriptions of the

Dyson vacuum cleaner violate their settlement agreement. (R. Doc. 1, ¶ ¶24-26).  Dyson further asserts that Oreck's in-store displays and print-ads show an Oreck and a Dyson vacuum cleaner and falsely and misleadingly state "only one of these vacuums helps inhibit bacteria." (R. Doc. 1, ¶ 35).  Finally, Dyson claims that Oreck falsely advertises that its "Intellashield" coating is a "bacteria fighting barrier on the Oreck XL that protects you and your family" and creates a "healthy environment." (R. Doc. 1, ¶ 37).

## II.  LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

## III. DISCUSSION

### A.   Res Judicata

Oreck argues that three of Dyson's false advertising claims are identical to claims settled in *Dyson I* and are barred by *res judicata*. Oreck specifically targets Dyson's claims based on the advertising messages that (1) the Dyson DC14 is "messy" and "spreads" dirt when emptied; (2) the Oreck XL Ultra 4120 does not emit a "puff" of dirt when emptied; and (3) the Oreck XL Ultra 4120 weighs "only nine pounds." Because Dyson's current claims could not have been brought in the previous lawsuit, *res judicata* is not implicated.

The federal law of res judicata applies to federal judgments. *See In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 n.12 (5th Cir. 2007) (citing *Semtek Int'l v. Lockhead Martin Corp.*, 531 U.S. 497 (2001)). The doctrine "forecloses relitigation of claims that were or could have been advanced in support of the cause of action on the occasion of the former adjudication." *Dallas Area Rapid Transit*, 383 F.3d 309, 312–13 (5th Cir. 2004) (citing *Allen*, 449 U.S. at 94). The party asserting the defense must show a (1) prior judgment on the merits, (2) entered by a court of competent jurisdiction, (3) between the same parties, (4) raising the same cause of action. *Id.* at 313. To determine whether the two suits involve the same cause of action, the Court asks "whether the two actions are based on the same 'nucleus of operative facts.'" *Davis*, 383 F.3d at 313 (citations omitted). This determination is a practical weighing of various factors, including "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Davis*, 383 F.3d at 313 (citations omitted). "If the cases are based on the same nucleus of operative facts, the first judgment's preclusive effect 'extends to all rights the original plaintiff had with respect to all or any part of the transaction, or series of connected transactions, out of which the [original]

-7-

action arose.'" *Davenport*, 484 F.3d at 326 (quoting *Petro-Hunt,* 365 F.3d at 395). "At the same time the plaintiffs are not barred from presenting any ground for relief arising out of conduct not complained of in the prior lawsuit. Subsequent conduct, even if it is of the same nature as the conduct complained of in a prior lawsuit, may give rise to an entirely separate cause of action." *Kilgoar v. Colbert County Bd. of Ed.*, 578 F.2d 1033, 1035 (5th Cir. 1978)(*citing Lawlor v. Nat'l Screen Service Corp.*, 349 U.S. 322 (1955).

Oreck argues that the parties' earlier settlement precludes Dyson from bringing similar claims in this lawsuit. While *res judicata* applies equally to settlements, *see Matter of West Texas Marketing Corp.*, 12 F.3d 497, 500 (5th Cir. 1994), Oreck cites no case indicating that its settlement should receive <u>greater</u> preclusive effect than a judgment. Indeed, the Fifth Circuit recently rejected Oreck's argument that *res judicata* applied differently to the "broad release" of claims at issue in this case. *See Oreck Direct LLC v. Dyson, Inc.*, No. 08-30804, slip op. at 5, 6 fn. 4 (5th Cir. 2/23/09). Dyson's claims are based on conduct that originated after the parties' settlement, and *res judicata* does not bar claims that could not have been brought during the original suit. *See Id.; Blair v. City of Greenville*, 649 F.2d 1365, 1359 (5th Cir. 1981)(res judicata does not bar suit based on racially discriminatory acts that occur after final

judgment in earlier racial discrimination action involving the same parties). *See also Gonzalez-Pina v. Rodriguez*, 407 F.3d 425 (1st Cir. 2005)("Defendant's post-reinstatement harassment and failure to assign work constitute subsequent conduct, that, even if it is of the same nature as the conduct complained of in a prior lawsuit, may give rise to an entirely separate cause of action.")(citations and quotations omitted); *Manning v. City of Auburn*, 953 F.2d 1355 (11th Cir. 1992)("Manning's August 1988 dismissal from *Hammock* cannot bar her claims from discriminatory acts occuring after that date."). Here, Dyson has sued Oreck for new and distinct violations of the Lanham Act and LUTPA, based on a different television infomercial and ad campaign from those at issue in the previous case. Many of the facts and issues are similar. But factual similarity, although relevant to collateral estoppel,[1] is not relevant to *res judicata*. *Test Masters Educational Services, Inc., v. Singh*, 428 F.3d 559, 572 (5th Cir. 2005). "The critical issue is whether the two actions are based on the same nucleus of operative facts." *Id.* (citations and quotes omitted). The advertisements Dyson complains of originated after the previous lawsuit and settlement, so Dyson

_____

[1] Collateral estoppel bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 128 S.Ct. 2161, 2171 (2008)(*quoting New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).

could not have sued Oreck for these alleged Lanham act/LUTPA violations in connection with that case. *Compare Oreck Direct, LLC v. Dyson, Inc*, 544 F.Supp.2d 502, 513 (E.D.La. 2008)("There is no indication that Oreck could not have attacked Dyson's claims about the DC 18 before the Court entered final judgment....This case does not present a situation in which plaintiff's claims are based on conduct transpiring only after the litigation had concluded.  Instead, Dyson's promotion of the DC18 with the advertising claims at issue in the second suit began to occur at least two and a half months before the parties settled the first litigation."), *aff'd*, No. 08-30804 (5th Cir. 2/23/09).  As a consequence, *res judicata* does not bar Dyson's claims.

Although Oreck frames its argument in terms of *res judicata*, it essentially argues that Dyson's claims are barred by contract, *i.e.,* the settlement agreement.  But the terms of the settlement agreement do not preclude Dyson's claims either.  The Court considers the parties' intent to determine whether they agreed to foreclose the claims in this lawsuit.  *See Smith v. Amedisys, Inc.*, 298 F.3d 434, 444 (5th Cir. 2002).  The settlement agreement provides that Oreck and Dyson are "free to use, at their election, the advertising claims that are being made by either party as of the Effective Date for the products existing in the United States marketplace as of the Effective Date." (R.

Doc. 39, Exhibit A). Oreck argues that its advertisements that the Dyson DC14 is "messy" and "spreads dirt" are covered by the agreement, because they are virtually identical to the advertisements contested in the earlier action. In *Dyson I*, Dyson challenged an Oreck infomercial, in which David Oreck warned that "bagless vacuums spread dirt, bacteria, mold and allergens all over your home." (R. Doc. 39, Exhibit 5). In the infomercial, David Oreck empties a Hoover bagless vacuum cleaner into a garbage can, sending a "dust cloud" into the air. (R. Doc. 39, Exhibit 5). Oreck then mentions the "mess" and the "smell" that come with emptying bagless vacuums. (R. Doc. 39, Exhibit 5). Dyson brought counterclaims against Oreck based on this infomercial, alleging that the ad was misleading for several reasons, including because Oreck did not follow Hoover's instructions on how to properly empty the vacuum. (05-361, R. Doc. 15, ¶58). In the ad at issue here, an Oreck spokesperson empties a Dyson vacuum cleaner, allegedly without following the manufacturer's instructions, and a cloud of dust comes out of the garbage can. (R. Doc. 39, Exhibit 3). The spokesperson then says "I don't think this is sanitary at all." The ad further describes the Dyson as "a mess" that gets "dust everywhere." Dyson's complaint in this suit states that "[t]hese claims and demonstrations are false because Oreck fails to empty the Dyson

bin properly in accordance with Dyson's instructions." (R. Doc.
1, ¶ 30).

Although the two "bin emptying" demonstrations resemble each
other, Oreck's latest ad makes a different claim.  The previous
infomercial featured a Hoover vacuum, and Dyson sued Oreck
because that infomercial "implie[d] that all bagless vacuums are
emptied in the same manner."  (05-361, R. Doc. 15, ¶58).  Dyson
argued that this claim was "false and misleading, particularly as
to Dyson's vacuums, which have both a completely different
emptying mechanism and instructions for emptying that bear no
relationship to what David Oreck falsely and misleadingly
portrays."  (*Id.*)  By contrast, the "messy" vacuum depicted in
the infomercial at issue here is a <u>Dyson</u>.  The manufacturer's
instructions that David Oreck allegedly disregards when emptying
the vacuum are <u>Dyson's</u>.  This is a specific attack on Dyson's
vacuum.  It is different in kind from the generic claim about
bagless vacuums at issue in *Dyson I*, and presents a more direct
injury to Dyson.  The parties' settlement agreement gave Oreck
permission to continue making those advertising claims it was
making at the time of settlement only.  Oreck does not argue that
it previously ran ads that attacked Dysons directly.
Accordingly, Dyson's current claims are not subject to the
settlement agreement.

Neither are Oreck's advertisements about the Oreck XL Ultra 4120 covered by the agreement, because the XL Ultra 4120 is a new product that was not "existing in the United States marketplace" at the time of the settlement. Oreck has consistently advertised the product as new, and only contests its "newness" now to gain the protections of its agreement with Dyson. The XL Ultra 4120 is functionally different in several respects from previous Orecks. Both the inner and outer bags are new, and the 4120 features Oreck's much touted IntellaShield technology, which the infomercial describes as a technological "breakthrough."(R. Doc. 39, Exhibit 3). Oreck also created new user manuals and updated the service manuals for the product. (*See* Conf. Brebner Decl., Exhibit B, at 98-99 & DX 34). Further, Oreck's corporate representative Michael Amburgey testified that Oreck complied with FTC guidelines that require products advertised as "new" to be either "entirely new" or changed "in a functionally significant and substantial respect," when marketing the "new" XL Ultra 4120. (*See* Conf. Brebner Decl., Exhibit A at 29-32). Amburgey further testified that the IntellaShield technology "provided an . . . additional benefit which was both relevant and meaningful to the consumer." (*See* Conf. Brebner Decl., Exhibit A at 30). The XL Ultra 4120 has similarities with previous Orecks, but it is indisputably a new model that was not "existing in the United States marketplace" at the time of the settlement. That

Dyson's false advertising allegations concern features that were the same on the old product (*i.e.*, the weight, the bag docking "Saniseal" system) is irrelevant. The settlement agreement provides only a safe harbor for existing products. Dyson is free to bring the exact claims it brought previously against the new product.

### B. False Advertising and "Puffery"

Dyson argues that statements contained in Oreck's ad campaign are false advertising under the Lanham Act, and violate the Louisiana Unfair Trade Practices Act.[2] Oreck counters that these statements are "puffery," and not actionable. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in advertising and sales in interstate commerce. The statute provides, in relevant part:

> Any person who, on or in connection with any goods . . . uses in commerce any false or misleading description of fact, or false or misleading

---

[2] The Louisiana Unfair Trade Practices Act prohibits "[u]nfair methods of competition and unfair or deceptive acts in the conduct of any trade or commerce." La. Rev. St. § 51-1405. While the statute does not clarify the elements of a false advertising claim, the parties do not make any distinction in their briefs between Lanham Act liability and LUTPA liability, and other courts have drawn the same parallels. *See, e.g., Bd. of Supervisors of La. State Univ. V. Smack Apparel Co.*, 438 F.Supp.2d 653, 663 (E.D. La. 2006); *Prudhomme v. Procter & Gamble Co.*, 800 F.Supp. 390, 395 (E.D. La. 1992); *La. World Exposition, Inc. v. Logue*, 746 F.2d 1033, 1039 (5th Cir. 1984).

representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). To make a *prima facie* case of false advertising under § 43(a), a plaintiff must establish:

> (1) A false or misleading statement of fact about a product;

> (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;

> (3) The deception is material, in that it is likely to influence the consumer's purchasing decision;

> (4) The product is in interstate commerce; and

> (5) The plaintiff has been or likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (citing *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1500 (5th Cir. 1990)).

In order to obtain money damages for false advertising under the Lanham Act, a plaintiff must establish that the challenged advertisement was either (1) literally false or (2) likely to mislead and confuse customers. *IQ Products Co. v. Pennzoil*

*Products Co.*, 305 F.3d 368, 375 (5th Cir. 2002). The Court assumes that literally false advertising actually misled customers. *Id.* But if the advertising is merely misleading or ambiguous, the plaintiff must demonstrate deception through direct evidence of consumer reaction to the advertising. *Id.*

Only claims of fact, not claims of opinion, are actionable under the Lanham Act. *Pizza Hut v. Papa John's Intern., Inc.*, 227 F.3d 489, 495-96 (5th Cir. 2000). The statement must be "specific and measurable, capable of being proved false." *Id.* at 496. Puffery is a non-actionable statement of general opinion that comes in two forms: "(1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." *Id.* at 497. But a statement that makes a claim as to the "specific or absolute characteristics of a product" is not puffery. *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). Often, "the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Id.*

Oreck claims that five of Dyson's claims should be dismissed since the advertisements are puffery, including: (1) Oreck's reference to the Dyson as "bulky;" (2) Oreck's assertion that its

vacuum emits "no puff" of dust when it is emptied; (3) Oreck's description of the Dyson bin emptying process as "messy;" (4) Oreck's claim that washing the Dyson filter is "not sanitary" and a "dirty little secret"; and (5) Oreck's claim that the XL Ultra 4120 weighs "only nine pounds," while the weight of the DC14 is "backbreaking."

**1. "Bulky"**

Oreck first argues that its use of the word "bulky" to describe the Dyson is puffery.  While the word standing alone is no more than a subjective opinion, context can add meaning to a phrase that is otherwise not actionable.  *See Pizza Hut*, 227 F.3d at 501.  In *Pizza Hut*, for example, the Fifth Circuit determined that Papa John's slogan "Better ingredients. Better Pizza," was puffery standing alone, because the adjective "better" as applied to "pizza" and "ingredients" was subjective and unquantifiable. *Id.*  Placed in the context of ads making misleading claims about the quality of Papa John's ingredients, however, the slogan itself became misleading.  *Id.*  By using the slogan in connection with verifiable claims, "Papa John's [gave] definition to the word 'better,'" giving it "the characteristics of a statement of fact."  *Id.* at 501–502.  Similarly, while the word "bulky" may be puffery standing alone, the statement is used in the phrase "too bulky to get under furniture," and uttered during a visual demonstration of the Dyson unable to maneuver under a chair.  In

context, the claim is that the Dyson, in contrast to the slimmer
Oreck, is too large (*i.e.*, bulky) to clean under furniture of a
certain height.  This claim is  "specific and measurable" and
"capable of being proven false," as discussed further *infra.  Cf.
Chlorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228
F.3d 24, 39 (1st Cir. 2000)(holding that slogan "Whiter is Not
Possible" "invites consumers to compare [defendant's detergent's]
whitening power against...other detergents" and was therefore not
puffery).  It is not puffery.

### 2.  "No puff"

Oreck's infomercial states that the XL Ultra 4120 creates
"no puff of dirt" when the bag is removed and will not "spew dirt
into the air," as compared to the Dyson, which creates "dust
city" when it is emptied.  Oreck argues that there is no way to
quantify a "puff."  The Court concedes that a "puff" is not a
measurable unit, but Oreck's "no puff" claim is part of its
general message that the XL Ultra 4120 does not emit dirt when a
consumer changes the bag.  This claim is verifiable: Either dirt
comes out when a consumer changes the bag or it does not.
Oreck's own infomercials are evidence enough that the presence of
dirt is demonstrable.  It is a recurring theme in Oreck's ads
that emptying a bagless vacuum results in a large, <u>visible</u> "puff"
of dirt.  In the *Dyson I* infomerical, David Oreck conducts an
elaborate black light demonstration to demonstrate the extent of

dirt that escapes from a Dyson when emptied.  The Court does not see why it would be harder to determine whether the XL Ultra 4120 also emits dirt.  Oreck's "no puff" comment is not puffery.

### 4.  "Messy"/"Not Clean"/"Dirty Little Secret"

The Court next considers Oreck's argument that statements calling parts of the Dyson unclean are puffery.  At various points, Oreck states that emptying a Dyson "spread[s] dirt" and is "messy" (the "bin emptying" claim).  In addition, the infomercial claims that washing the Dyson filter is "not very clean or sanitary" and a "dirty little secret" (the "filter cleaning" claim).  Oreck asserts that whether something is messy, dirty or the like is a matter of opinion, and the Court agrees. *Cf. American Italian Pasta Co. v. New World Past Co.*, 371 F.3d 387, 391 (8th Cir. 2004)("[The terms] 'Well-liked' and 'admired' are entirely subjective and vague" and constitute puffery). Reasonable minds will differ over whether a particular object is clean based on individual tastes and preferences, and Dyson does not suggest that there is an objective standard of cleanliness that can be used to debunk Oreck's claim.  *Compare Southland Sod Farms*, 108 F.3d at 1145 ("50% Less Mowing" was a "specific and measurable advertisement claim of product superiority based on product testing."); *Castrol*, 987 F.2d at 946 ("longer engine life and better engine protection" claim was "specific and measurable by comparative research.").

-19-

But focusing on phrases like "messy," "not very clean" and "dirty little secret" misrepresents Dyson's claims. Dyson does not argue that these phrases alone are false advertising. Dyson has attacked two specific demonstrations in Oreck's infomercial that Dyson claims make false and misleading statements about the parties' products. Dyson's "bin emptying" claim challenges Oreck's infomercial, "because Oreck fails to empty the Dyson in accordance with Dyson's operating instructions." (R. Doc. 1, ¶ 30). Dyson quotes the word "messy" in its complaint in connection with this claim, (*id.*), but Dyson's allegation is not that the statement "Dysons are messy," standing alone in a print-ad or radio announcement, is actionable. Dyson claims that Oreck's visual demonstration is not an accurate depiction of its bin emptying process, *i.e.*, that Oreck misled its viewers into thinking that the Dyson spreads dirt by not emptying the bin properly. The Court can determine if Oreck followed Dyson's instructions during the infomercial, and whether a vacuum spreads dirt is verifiable. *See, supra,* Section B.2 ("No Puff"). It is not a defense to Dyson's "bin emptying" claim to say that individual words and phrases used during the overall demonstration are puffery, because Dyson's claim is not dependent on these puffing words.

Similarly, Dyson's "filter cleaning" claim attacks Oreck's infomercial, because the infomercial allegedly "claims that the user of the Oreck does not need to come into contact with the

dust and dirt captured by the [Oreck] vacuum." (R. Doc. 1, ¶ 32).
This claim, again, can be proven true or false. *See, supra,*
Section B.2. That Dyson quotes the phrase "not very clean or
sanitary" in its complaint, and that the phrase is a subjective
opinion is not enough to dismiss the filter claim entirely. The
words "not very clean or sanitary" may not be actionable, but
Oreck's statement that its users do not have to touch dirt while
maintaining their vacuums is verifiable. Oreck's focus on loose
adjectives in Dyson's complaint is unconvincing, and the Court
declines to dismiss Dyson's "bin emptying" and "filter changing"
claims as puffery.

### 4. "Backbreaking"/"Only Nine Pounds"

"Oreck's infomercial also claims that the Oreck XL Ultra
vacuum cleaner weighs 'only 9 pounds,' and that the weight of the
Dyson by comparison, is 'backbreaking.'" (R. Doc. 1, at ¶ 33).
Oreck again claims that these claims are just puffing. The Court
agrees that no reasonable consumer would rely on the
infomercial's description of the Dyson's weight as backbreaking.
The speaker is merely conveying an opinion that the Dyson is
heavy, and doing so in a hyperbolic manner. There is no danger
of consumer deception and no basis for a false advertising claim
based on such a statement. *See* Time Warner Cable, Inc. v.
DIRECTV, 497 F.3d 144, 159 (2nd Cir. 2007(holding that a
commercial "so grossly exaggerated that no reasonable buyer would
take it at face value" was puffery).

Dyson also challenges Oreck's statement that the XL Ultra 4120 weighs "only nine pounds." The XL Ultra's weight is an empirical fact, and scientifically verifiable claims are not puffery. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)(holding that defendant's claim that its lawnmower results in "50% Less Mowing" was a "specific and measurable advertisement claim of product superiority based on product testing and, as such, [wa]s not puffery.")(citations omitted); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3rd Cir. 1993)(Pennzoil's guarantee of "longer engine life and better engine protection" was not pufffery because it was "specific and measurable by comparative research."). Consequently, there is no basis to dismiss Dyson's claim that Oreck misrepresents the weight of the XL Ultra 4120.

**C. Truth**

Finally, Oreck asserts that Dyson's claim based on the statement that the Dyson "simply cannot" clean under furniture should be dismissed because the claim is true. In the infomercial, David Oreck and Terri, the host, compare the vacuums' ability to clean under furniture. (R. Doc. 39, Exhibit 3). First Terri tries to clean under a piece of furniture with the Dyson DC14, and the infomercial shows that the size of the Dyson's nozzle keeps it from reaching. Oreck then states, "I can see that you can't get that," and she replies, "Nope, I can't." Oreck then whips out the XL Ultra and vacuums up the dust under

the furniture.  The infomercial later asks if viewers are

"frustrated that [bagless vacuums] are too bulky to get under

furniture?"  Dyson's complaint alleges that the message that the

Dyson cannot clean under furniture is false since the Dyson DC14

comes with attachments that allow it to clean under furniture.

Further, at oral argument, Dyson's counsel showed that the

infomercial did not accurately depict the DC14, since the

attached wand on the Dyson--that easily reaches under furniture--

had been removed from the vacuum pictured in the infomercial.

Oreck asserts that the advertisement is not false since viewers

would understand that the depiction is a "nozzle to nozzle"

comparison. (Brebner Decl., Exhibit P).

This issue cannot be resolved on summary judgment.  The

Lanham Act imposes liability on "[a]ny person who . . . uses in

commerce any . . . false or misleading description of fact, or

false or misleading representation of fact, which . . . in

commercial advertising . . . misrepresents the characteristics .

. . of another person's goods." 15 U.S.C. § 1125(a)(1)(B); *IQ*

*Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 372 (5th Cir.

2002).  If the statement is literally false, the Court assumes

that it actually misled consumers. *Id.* at 375.  If the statement

is shown to be misleading or ambiguous, the plaintiff must

demonstrate actual deception through direct evidence of consumer

reaction or evidence of consumer surveys. *Id.*  In evaluating

whether an advertisement is false or misleading, a court must

analyze the message in its full context. *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007).

Here, the advertisement is not literally false. The infomercial accurately shows the Dyson's inability to clean under furniture of a certain height without attachments. When David Oreck says "I can see you can't get that," the viewer can see as well as Oreck that the Dyson's nozzle will not fit under the piece of furniture. The demonstration is misleading, however. As counsel for Dyson demonstrated at oral argument, the Dyson's attachments allow it to reach spaces that its nozzle cannot. Oreck's depiction of the Dyson without these attachments, coupled with statements that the Dyson cannot clean under furniture, could cause a reasonable consumer to think that the Dyson is incapable of cleaning under furniture in any circumstance, when it clearly can if the consumer uses the attachments provided with the product. As such, the Court finds that there is a triable issue of fact as to whether the advertisement actually deceived consumers, and DENIES summary judgment on this claim.

### IV. CONCLUSION

For the foregoing reason, the Court GRANTS summary judgment IN PART and DENIES summary judgment IN PART.

New Orleans, Louisiana, this __4th__ day of March 2009.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE