UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DYSON INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-9633** |
| **ORECK CORPORATION ET AL.** | **SECTION: "R" (4)** |

### ORDER

Before the Court is **Oreck's Motion for a Protective Order Precluding David Oreck's Deposition (R. Doc. 116),** filed by the Defendants, Oreck Corporation, Oreck Holdings, LLC, Oreck Direct, LLC, Oreck Merchandising, LLC, Oreck Sales LLC, Oreck Homecare, LLC and Oreck@Home, LLC (collectively, "Oreck") seeking the entry of a Protective Order precluding the Plaintiff, Dyson, Inc. ("Dyson") from proceeding forward with the deposition of David Oreck–Oreck's founder. Oreck argues that Mr. Oreck cannot provide any testimony whatsoever that is relevant to the merits of this lawsuit.

Also before the Court is a **Motion To Stay David Oreck's Deposition (R. Doc. 117)** seeking to stay David Oreck's deposition until the Court resolves Oreck's Motion for Protective Order and Dyson's Motion for Partial Summary Judgment and until Dyson's completes its third Rule 30(b)(6) Deposition. Dyson opposes both motions. (R. Docs. 124 and 138.) The motions were heard with oral argument on Wednesday, June 24, 2009.

### I.  Background

This case is the third action in the past three years between Oreck and Dyson. In the first

action, Oreck Holdings, LLC v. Dyson, Inc., No. 05-0361, Oreck alleged that Dyson's "no loss of suction" advertisement was false advertising under the Lanham Act. Dyson then brought a number of false advertising counterclaims against Oreck. (*See* R. Doc. 1 ¶ 12.) The parties filed cross-motions for summary judgment which were pending at the time that they entered into a settlement agreement on January 5, 2007. (*See* R. Doc. 1 ¶ 13.) The matter was dismissed with prejudice on January 10, 2007. (*See* No. 05-0361, *Oreck Holdings, LLC v. Dyson, Inc.,* R. Doc. 148.)

The settlement agreement contains a mutual release for all claims "arising out of" or "related to" the advertisements at issue and provided that the parties could continue making those claims for products that were "existing in the United States market place" as of the day of the settlement.

Dyson later filed the subject suit against Oreck on December 18, 2007, again contending that Oreck's new advertising campaign directly attacking Dyson violates the Lanham Act and the Louisiana Unfair Trade Practices Act ("LUPTA"). (*See generally* R. Doc. 1.) Dyson alleges that Oreck's new half-hour infomercial and in-store and print advertising falsely malign the Dyson DC14 model vacuum cleaner in violation of the Lanham Act and LUPTA. (R. Doc. 1 ¶¶ 3-4.)

Dyson asserts that Oreck's half-hour infomercial falsely states that: (1) the Dyson DC14 "cannot" clean under furniture; (2) emptying the Dyson model's bin "spreads dirt" and is "messy" (3) the Oreck's "Saniseal" system creates "no puff of dirt" when emptying the vacuum cleaner; (4) Oreck users do not come into contact with dust and dirt captured by the vacuum, in contrast to Dyson users, who must use a filter that is "not very clean or sanitary" and a "dirty little secret;" (5) the Oreck XL weighs "only nine pounds," compared to the Dyson, whose users find it "backbreaking." (R. Doc. 1 ¶¶ 27-34.) Dyson also alleges that the infomercial's disparaging descriptions of the Dyson vacuum cleaner violate their settlement agreement. (R. Doc. 1 ¶¶ 24-26.)

Dyson also contends that Oreck's in-store displays and print-ads show an Oreck and a

Dyson vacuum cleaner in a false and misleadingly light and further represents that its "Intellashield" coating is a "bacteria fighting barrier on the Oreck XL that protects you and your family" and creates a "healthy environment." (R. Doc. 1 ¶ 37.)

During the pendency of the matter, Dyson issued a Notice of Deposition seeking to depose David Oreck, the founder of the Oreck entities. In response to the Notice, Oreck filed the subject motion seeking a protective order precluding Dyson from taking David Oreck's deposition. (*See generally* R. Doc. 116.) Oreck insists that Mr. Oreck cannot provide any testimony relevant to the merits of the lawsuit. Oreck further asserts that according to Michael Amburgey, Mr. Oreck had no involvement in the substantiation of Oreck's specific product advertising claims at issue in this case. In addition, Oreck argues that Mr. Oreck will not be a witness at trial, also noting that Oreck is willing to stipulate to the facts surrounding Mr. Oreck's involvement.

Oreck also filed a separate motion seeking to stay the aforementioned deposition. (*See generally* R. Doc. 117). Specifically, Oreck requests that the Court stay Mr. Oreck's deposition until: (1) the undersigned resolves the aforementioned Motion for Protective Order; (2) the presiding District Judge resolves Dyson's Motion for Partial Summary Judgment which deals with the issue of establishing liability for breach of the Settlement Agreement; and (3) Dyson completes its third Rule 30(b)(6) deposition.

**II.      Standard of Review**

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Rule 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will

> be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.
>
> Fed.R.Civ.P. 26(c).

Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, and provides that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

### III. Analysis

Oreck contends that Dyson should be precluded from proceeding forward with David Oreck's deposition because: (1) Mr. Oreck cannot provide any testimony relevant to the merits of the lawsuit; (2) according to Michael Amburgey, Mr. Oreck had no involvement in the substantiation of Oreck's specific product advertising claims at issue in this case; and (3) Mr. Oreck will not be a witness at trial. Oreck emphasizes that it is willing to stipulate to the facts surrounding Mr. Oreck's involvement in this matter.

Dyson contends that Oreck's suggestion that David Oreck's testimony would not have any consequence to the merits of the lawsuit is inaccurate. It argues that Oreck is not only the company Chairman but also is its on-air spokesperson who knowingly made false claims and conducted may of the false demonstrations at issue in this lawsuit. Additionally, Dyson asserts that Oreck played an active role in developing and approving the advertising for the company during the relevant time period. Therefore, Dyson urges the Court to deny the subject motion.

The Court notes that, according to the pleadings, Mr. Oreck's deposition testimony will provide information relevant to Dyson's burden of substantiating its advertising claim. Yet, Oreck

4

contends that Mr. Oreck has no knowledge relevant to proving or disproving Dyson's claim in this regard, simply because he is not the designated corporate representative on this issue. To bolster its position, Oreck's submitted the Affidavit of Oreck's Chief Marketing Officer Michael Amburgey, rather than the Affidavit of David Oreck himself. (*See* R. Doc. 116-4, Decl. of Michael Amburgey In Support of Oreck's Mot. for Protective Order Precluding David Oreck's Depo.)

The Court next notes that Mr. Oreck actually was the corporate spokesperson for the infomercials which form the basis of this false advertising claim. Clearly, Mr. Oreck would have information that could substantiate Dyson's advertising claim given the prominent role he played in the infomercials. Furthermore, to the extent that David Oreck participated in the informercial and provided feedback on Oreck's advertisements, including the creative development process, the Court finds that his testimony is relevant to the issues to be tried in this litigation. (*See* Ex. 3 Depo. Tr. Of Maribeth McNamara at 37:7-14, Apr. 28, 2009.) Therefore, the Court remains unpersuaded by Oreck's representation that the Founder and CEO of the company has no knowledge about any matter that could be relevant to the subject matter of the litigation, particularly where as here, he was the feature speaker in the infomercials. Accordingly, Oreck's motion for a protective order is denied.

With respect to Oreck's request that the Court issue a Stay Order delaying the deposition of David Oreck, the Court declines to do so. While Oreck suggests that its pending motion for protective order is a valid reason to stay the deposition, the Court finds that the stay request must be denied in light of the ruling set forth above. In addition, the Court is not persuaded by Oreck's contention that Dyson's Motion for Partial Summary Judgment constitutes another valid reason to delay the deposition. Finally, Oreck's suggestion that the Court should delay David Oreck's deposition until it completes Dyson's 30(b)(6) deposition also lacks merit. On the contrary, it

remains apparent that David Oreck possesses information that would likely result in the discovery of relevant evidence.

**IV.     Conclusion**

Accordingly,

**IT IS ORDERED** that Oreck's **Motion For a Protective Order Precluding David Oreck's Deposition (R. Doc. 116)** is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Oreck's **Motion To Stay the Deposition of David Oreck (R. Doc. 117)** is hereby **DENIED**.

New Orleans, Louisiana, this 10th day of August 2009

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**