UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| DYSON, INC. | CIVIL ACTION |
| VERSUS | NO: 07-9633 |
| ORECK CORPORATION, *ET AL.* | SECTION: R(4) |


**ORDER AND REASONS**

Before the Court is Oreck's Motion for Partial Summary Judgment. Oreck's Motion is DENIED in part and GRANTED in part for the following reasons.

**I.  Background**

The Court has set forth the factual background and procedural posture of this case in more detail elsewhere. (*See* R. Doc. 189.)  In brief, this is the third suit between Oreck and Dyson.  The parties settled the first case, *Oreck Holdings, LLC v. Dyson, Inc.*, No. 05-361, and entered into a settlement agreement containing the following provision governing future advertising:

1.   *Future Advertising*

a.   The parties shall be free to use, at their

election, the advertising claims that are being made by either party as of the Effective Date for the products existing in the United States marketplace as of the Effective Date, without incurring any further liability to each other. This provision shall also apply to, and allow such advertising by, (i) distributors, (ii) retailers and (iii) affiliates.

b. For a period of one year after the Effective Date, neither Dyson nor Oreck, in any visual element of its advertisements, shall use or feature the vacuums of the other in connection with any claim that either product is unsanitary, dirty, unhealthy, or the like.

Dyson filed the present suit on December 18, 2007, claiming that Oreck's new advertising campaign directly attacking Dyson violates the Lanham Act, the Louisiana Unfair Trade Practices Act ("LUPTA"), and the terms of the settlement agreement. Dyson recently moved for summary judgment that Oreck's XL 21 infomercials and "Dare to Compare" infomercials, in-store displays, demonstrations, and newspaper advertisements violated the settlement agreement. At oral argument on that motion, counsel for Oreck argued for the first time that section 1(a) of the settlement agreement, quoted above, foreclosed its liability for the XL 21 infomercials. The Court allowed Dyson to submit further briefing on this issue and ultimately held that section

1(a) did not apply to the XL 21 commercials to the extent that they used or featured a Dyson in connection with a claim that the Dyson was unsanitary, dirty, unhealthy, or the like. (*See* R. Doc. 189.)

Oreck now moves for summary judgment on three grounds. First, Oreck argues that Dyson's claims that the XL 21 commercials violate the Lanham Act and LUTPA are barred by *res judicata.* Dyson admits that it is not bringing either a Lanham Act or LUTPA claim based on the XL 21 commercials. (*See* R. Doc. 228-1 at 2.) The Court therefore DENIES Oreck's motion on this ground.

Oreck next argues that section 1(a) of the settlement agreement applies to the XL 21 commercials. The Court has previously rejected Oreck's argument (*see* R. Doc. 189), and Oreck has recently filed a notice withdrawing it (*see* R. Doc. 190). The Court therefore DENIES Oreck's motion on this ground.

Oreck's last argument is that section 1(a) of the settlement agreement prohibits Dyson's false advertising claims with respect to Oreck's statements in the Dare to Compare commercials that Dyson vacuum cleaners cannot fit under furniture.[1] For the

---

[1] The Court previously held that Dyson stated false advertising claims with respect to Oreck's statements that Dyson vacuum cleaners cannot fit under furniture (*see* R. Doc. 89), but Oreck's section 1(a) defense was not raised at that time.

following reasons, the Court GRANTS Oreck's motion on this ground.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts

to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**B.  Contract Interpretation**

In *Doré Energy Corp. v. Prospective Inv. & Trading Co., Ltd.*, the Fifth Circuit recently stated the principles governing the interpretation of settlement agreements under Louisiana law:

> A settlement agreement is a contract. The rules of construction applicable to contracts are therefore used. *Trahan v. Coca Cola Bottling Co. United, Inc.*, 894 So.2d 1096, 1106 (La. 2005); *see also La. Civ. Code Ann. art. 3071*. The ambiguity of a contract is a legal question. *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 590 (La. 2007). If the answer to the legal question of ambiguity is in the negative, then interpreting that unambiguous contract is also a legal issue for the court. *Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998).
>
> Louisiana ha[s] adopted several statutory rules for interpretation of contracts. We find some relevant

5

guidance in each of the following sections of the Louisiana Civil Code:

    Art. 2045. Determination of the intent of the parties:  Interpretation of a contract is the determination of the common intent of the parties.

    Art. 2047. Meaning of words:  The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter.

    Art. 2048. Words susceptible of different meanings:  Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract.

    Art. 2049. Provision susceptible of different meanings:  A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.

    Art. 2050. Provisions interpreted in light of each other:  Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as

6

a whole.

> Art. 2053. Nature of contract, equity, usages, conduct of the parties, and other contracts between same parties: A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.

*Doré Energy Corp. v. Prospective Inv. & Trading Co., Ltd.*, 570 F.3d 219, 225 (5th Cir. 2009).

**III. Analysis**

The parties' settlement agreement permits Oreck and Dyson to continue using "the advertising claims that [were] being made by either party as of the Effective Date for the products existing in the United States marketplace as of the Effective Date without incurring any further liability to each other." The parties refer to this provision as the "safe harbor" clause. It allows them to continue making certain claims about each other's products that they made before the agreement's Effective Date. Oreck argues that the safe harbor clause applies to claims in the Dare to Compare infomercial that the Dyson cannot vacuum under furniture.

Before the Effective Date, Oreck ran an advertisement

showing an Oreck and a Dyson vacuum cleaner trying to clean under a table. (*See* UPR1-XL21_infomercial, at 2:16.) The Oreck is able to fit, but the Dyson cannot. The narrator asks, "Which vacuum is more furniture friendly and can clean places other vacuums can't touch?" (*Id.*)

The Dare to Compare infomercial also depicts a Dyson and makes similar claims:

1. A consumer attempts to vacuum under a chair with a Dyson and states "It won't go under there." (Vac1 Dare to Compare Infomercial, at 0:30 seconds.)
2. The commercial's host, Terrie Oullette, tries to vacuum under a credenza using a Dyson as David Oreck exclaims, "I can see you can't get that." Oullette responds, "No, I can't, David." (*Id.* at 7:20.)
3. While the Dyson DC14 is shown unsuccessfully trying to vacuum under a chair, the narrator asks, "Are you . . . frustrated because [bagless vacuums are] too bulky to get under furniture?" (*Id.* at 8:12.)
4. Comparing the Oreck XL Ultra and two bagless vacuums, including a Dyson, David Oreck states that the Oreck "gets places bagless vacuums simply cannot." (*Id.* at 9:42.)

The parties dispute whether the Dare to Compare claims are the same "advertising claims that are being made" in the pre-

Effective Date commercial.[2] Dyson seems to argue that the safe harbor clause protects only new claims that match old claims word-for-word. At the very least, Dyson argues, the scope of the safe harbor clause should be left to the jury. (R. Doc. 228-1 at 10.) The Court rejects this argument. The Court does not find the language of the safe harbor clause ambiguous, and its interpretation is a question of law. Were there an issue about whether the old and new claims are *substantively* different, there might be a jury question. But that issue is not presented here. Both the old and new claims make the same point, namely, that Dyson vacuums cannot clean under furniture.

Dyson seems to focus on the fact that the old claim is a question, whereas at least three of the Dare to Compare claims are affirmative statements. (R. Doc. 228-1 at 9-10.) But in the context in which the old claim is made, and in the mind of any reasonable viewer, this rhetorical "question" is no different from an affirmative claim that the Dyson cannot clean places (*i.e.*, under furniture) that the Oreck can. (*See* R. Doc. 89 at 17-18 (subjective opinion standing alone may be specific and measurable claim when considered in context)); *see also Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 501 (5th Cir.

---

[2] Dyson does not dispute that section 1(a) otherwise applies to these particular Dare to Compare claims.

2000) (context may give comparative claim "the characteristics of a statement of fact"); *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 39 (1st Cir. 2000) (inviting consumers to compare product not mere puffery).

Similarly, the Dare to Compare claims state that the Dyson "won't go under" furniture, "can't get" under furniture, is "too bulky to get under furniture," and "simply cannot" get under furniture. (Vac1 Dare to Compare Infomercial, at 0:30, 7:20, 8:12, 9:42.) No reasonable jury could find that these advertising claims are different from the old claim. Accordingly, the Dare to Compare claims are protected by section 1(a) of the settlement agreement.

### III. Conclusion

Oreck's Motion is DENIED in part and GRANTED in part for the reasons stated.

New Orleans, Louisiana, this 9th day of October, 2009.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

10